UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
VINCENZO OPPEDISANO,                             :
                              Plaintiff,          :      **OPINION AND ORDER**
      v.                                          :
                                                  :      20 CV 5395 (VB)
LYNDA ZUR,                                        :
                              Defendant.          :
--------------------------------------------------------------x

Briccetti, J:

Plaintiff Vincenzo Oppedisano brings this action against his former romantic and alleged business partner, defendant Lynda Zur. Plaintiff asserts claims for unjust enrichment, quantum meruit, breach of contract, breach of the duty of good faith and fair dealing, and breach of fiduciary duty. Plaintiff also seeks a declaratory judgment and certain relief pursuant to New York's partnership law.

Now pending are defendant's motion for summary judgment (Doc. #107), and plaintiff's motion for partial summary judgment (Doc. #115).

For the reasons set forth below, defendant's motion is GRANTED in part and DENIED in part, and plaintiff's motion is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

The parties have submitted memoranda of law, statements of material undisputed facts pursuant to Local Civil Rule 56.1, and supporting declarations and exhibits. Together, they reflect the following background.

This case arises from a dispute over the parties' respective ownership of and involvement in an aviation-services business operated in Fort Lauderdale, Florida.

I.   <u>Formation of Sano Aviation Corporation</u>

In 2004, defendant's husband died and left her with control of the Aztec Jet Center ("Aztec"), a fixed-base operator ("FBO"),[1] located at the Fort Lauderdale Executive Airport. (Doc. #116 ("Pl. 56.1 Statement") ¶¶ 1–3).  Subsequently, in approximately 2005, plaintiff and defendant began what would ultimately be a thirteen-year romantic relationship.  (Doc. #112 ("Def. 56.1 Statement") ¶ 1).

On June 2, 2005, plaintiff filed a certificate of incorporation with the New York Department of State for a newly formed entity called Sano Aviation Corporation ("SAC").  (Doc. #117-1).  Over the years, plaintiff has formed and operated several businesses using the trade name "Sano"—the last four letters of his surname.  (Pl. 56.1 Statement ¶ 11).

On March 14, 2006, plaintiff registered SAC with Florida's Department of State as a foreign corporation doing business in Florida.  (Docs. ##111-5, 111-6).  Plaintiff is identified as chairman and president of SAC in the registration paperwork.  (Doc. #111-6 at ECF 4).[2]

Although the record is murky as to the precise mechanics, the parties agree SAC eventually took over operation and control of Aztec's business, rebranding it as "Sano Jet Center."  (Doc. #127 ¶ 12).  According to defendant, this change was precipitated by "bad advice" she received from a New York lawyer whom plaintiff had selected.  (Doc. #128 ¶¶ 11–

---

[1]    FBOs are businesses granted rights by an airport to provide various "aviation services such as fueling aircraft, hangar rental, parking, tie-downs, aircraft rental and maintenance, and flight instruction."  (Pl. 56.1 Statement ¶ 2).

[2]    "ECF __" refers to page numbers automatically assigned by the Court's Electronic Filing System.

12).  At the time, defendant asserts, various parties were pursuing the assets of her late husband's estate.  Therefore, the New York lawyer allegedly advised defendant to move "ownership of the Florida FBO business into Sano Aviation Corp.," and operate the FBO using "a company name that appeared wholly unaffiliated with my husband."  (Id. ¶¶ 11–12).

From 2007 to 2010, annual reports filed with the Florida Department of State identify plaintiff as the chairman and president of SAC.[3]  (Doc. #117-22 at ECF 2–5).  For the years 2007 to 2012, federal tax returns also list plaintiff as the sole shareholder of SAC.  (Docs. ##117-3–117-8).  Nevertheless, defendant insists both she and plaintiff "agreed and were fully aware that the Florida FBO business – whether named Aztec Jet Center, Sano Jet Center, or otherwise – was always solely owned by me and would remain solely owned by me."  (Doc. #128 ¶ 13).

II.   Transfer of SAC Stock

Over the several years of their relationship, the parties signed and executed a series of documents which now loom large in this lawsuit.

First, on November 13, 2006, plaintiff and defendant executed a document that appears to create an irrevocable inter vivos trust (the "Trust").  (Pl. 56.1 Statement at 16; Doc. #110-4).  The document identifies plaintiff as the grantor and beneficiary and defendant as the trustee; it does not identify any trust property.  Although plaintiff disputes the legal effect of the document, he does not dispute that he signed and executed it.   The document was also notarized.  (Doc. #110-4 at ECF 13–14; Doc. #111-1 at 72).[4]

---

[3]   Plaintiff states in his 56.1 Statement that he is listed as chairman and president of SAC through 2011.  (Pl. 56.1 Statement ¶ 32).  However, the 2011 annual filing reflects Sigrun Corporation in those roles.  (Doc. #111-8).

[4]   Citations to transcripts refer to the page number at the top-right hand corner of each transcript page.

Second, on August 8, 2007, plaintiff signed a document entitled "Stock Power."  The
document reads as follows:

> **VINCENZO OPPEDISANO**, individually, as shareholder, president, officer, and all
> other titles, hereby irrevocably assigns and transfers unto **LINDA ZUR,[5] as trustee of
> the Vincenzo Oppedisano trust dated November 13, 2006,** ALL of his Shares of Stock
> in SANO AVIATION INC., standing in his name on the books of said Corporation.  This
> transfer is for no consideration.

(Doc. #110-5 at ECF 1).  The parties also dispute the nature and legal effect of this document,
but plaintiff does not dispute that he signed it.  (Doc. #111-1 at 60).  This document is also
notarized.  (Doc. #110-5 at ECF 1).  Relatedly, an undated stock certificate states "Linda Zur, as
trustee of the Vincenzo Oppedisano Trust" is the owner of all two hundred shares of stock in
SAC.  (Doc. #117-2 at ECF 1).

Third, on January 20, 2011, the parties signed a document entitled "Purchase and
Transfer of Stock Agreement" (the "Purchase Agreement").  (Doc. #110-6).  The Purchase
Agreement identifies the Trust as the seller of two hundred shares of capital stock in SAC,
"issued to Seller on or about June 2, 2005."  (Id. at ECF 1).  An entity called Sigrun Corporation
is identified as the buyer.  Defendant is the sole owner and shareholder of Sigrun, a corporation
she formed in Delaware on January 12, 2011.  (Pl. 56.1 Statement ¶¶ 52–53).

The document has a signature page with several blocks.  Both defendant and plaintiff
signed their names under the "SELLER" blocks.  Defendant is identified as the trustee of the
Vincenzo Oppedisano Trust, while plaintiff's name is listed with no additional description.
Defendant also signed her name under the signature block for "BUYER" but, there, she is
identified as the president of Sigrun Corporation.  (Doc. #110-6 at ECF 3).  As with the other

---

[5]      Defendant's name seems to be misspelled in certain documents, but the parties do not
dispute that "Linda Zur" refers to defendant.

documents discussed, plaintiff contests the legal validity and effect of the Purchase Agreement, but does not dispute that he signed it.  (Doc. #111-1 at 70–71).

On November 6, 2011, defendant filed a "Certificate of Domestication" for SAC with the Florida Department of State.  (Doc. #111-9).  Defendant is identified in the document as the director of SAC.[6]  (Id. at ECF 5).  Also, starting in 2011, defendant signed SAC's annual reports filed with Florida's Department of State, and she is identified as SAC's director starting with the 2012 report.  (Docs. #111-8, 111-10).[7]  Beginning in 2013, defendant is listed as SAC's sole shareholder on the company's federal tax returns.  (Doc. #111-16).

III.   Operation and Control of SAC

The parties vigorously dispute whether and the extent to which plaintiff participated in the management and operation of Sano Jet Center and SAC.  Plaintiff contends he played an integral role in nearly every operational aspect of the business:  managing the tarmac, supervising employees, monitoring fueling, performing repairs, and completing grading and site

---

[6]      Defendant contends that by domesticating SAC in Florida, she formed a new, Florida-based entity distinct from the Sano Aviation Corporation registered in New York.  (See, e.g., Def. 56.1 Statement ¶¶ 13–14).  Plaintiff disputes this characterization and argues defendant had no legal right to domesticate SAC because plaintiff was still the sole owner of the business.  (Pl. 56.1 Statement at 19).  This issue is ultimately immaterial to the resolution of the instant motion, so the Court declines to weigh in on the matter.  However, for the sake of simplicity only, the Court does not adopt defendant's distinction between the purported "New York entity" and "Florida entity."

[7]      In his 56.1 Statement, plaintiff asks the Court to exclude and strike Exhibit 10 to the DeSouza Declaration (Doc. #111-10) because defendant did not produce the documents contained therein in response to plaintiff's discovery requests (Pl. 56.1 Statement at 20 n.12).  Because these documents are public and readily available on a Florida government website—a fact defense counsel pointed out in response to plaintiff's counsel (Doc. #117-20 at ECF 2)—this request is denied.  Defendant was not obligated to produce documents equally available to both parties.  Nevertheless, defense counsel offered to produce the documents anyway.  (Id. ("If you want them produced by Ms. Zur, I can do so.")).  In short, the Court will neither strike nor disregard this exhibit.

work, among other things. (Doc. #118 ¶¶ 19–26). According to plaintiff, at the time he became involved in the business, it was in "financial ruin" (id. ¶ 10), in desperate need of repairs and organizational improvements (id. ¶¶ 24, 31), and suffering from a poor reputation in the aviation community (Pl. 56.1 Statement ¶ 6). Plaintiff insists it was only with his intensive assistance and commitment that the business turned a corner, becoming profitable and successful.

Nonetheless, plaintiff also contends he relied completely on defendant to manage the "books" aspect of the business, including running the "office and administrative portions of the FBO." (Doc. #118 ¶ 44; Doc. #111-1 at 98–99, 109, 149). In fact, plaintiff testified at his deposition that he signed all documents defendant presented to him and did not read any paperwork related to the FBO or alleged partnership. (See, e.g., Doc. #111-1 at 109).

Defendant sharply disputes plaintiff's characterization of his role in Sano Jet Center. Defendant asserts the FBO was not "rundown" or "in distress" when she took control of it following her husband's death. (Doc. #128 ¶ 5). She also insists plaintiff "never had any role in the management, ownership, and/or operation of Aztec Jet Center, Sano Jet Center, or any other name for the Florida FBO business." (Id. ¶ 6). Defendant further emphasizes plaintiff made no capital contributions to the FBO and did not guarantee or sign any of the business loans SAC took out to expand and improve its facilities. (Id. ¶ 19; Def. 56.1 Statement ¶ 30). Neither party has been able to produce any documents plaintiff signed on behalf of SAC or Sano Jet Center, though plaintiff testified he recalls signing payroll checks. (See Pl. 56.1 Statement at 30; Doc. #111-1 at 103–04).

IV.     Breakdown of SAC

In approximately May 2019, the parties' romantic relationship ended. (Doc. #111-3 at 129–30; Doc. #133 ¶ 4). Plaintiff alleges that shortly prior to their separation, defendant

approached him and proposed they sell the FBO business, splitting the profits equally so they could "travel the world together."  (Doc. #13 ("Am. Compl.") ¶ 7).  However, according to plaintiff, defendant had already secretly initiated a partnership with a third party to own and operate the FBO (id. ¶ 137), thereby "freezing Plaintiff out of both the Partnership and management of the FBO" (id. ¶ 235).

Although defendant disputes this narrative, the parties agree that in the spring of 2019, defendant began running the FBO under the banner "Fort Lauderdale Executive Jet Center." (Doc. #110 ¶ 22; Doc. #121 at 28).  Defendant now operates the FBO formerly known as Sano Jet Center in partnership with an individual and investor named Marshall Myles.  (Doc. #13-5); Doc. #111-3 at 19).

## DISCUSSION

I.    Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.[8]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby,

---

[8]    Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 322–23.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  Brown ex rel. Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011).  "The mere existence of a scintilla of evidence in support" of the non-moving party's position is likewise insufficient; "there must be evidence on which the jury could reasonably find for" the non-moving party.  Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need consider only evidence that would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736,

746 (2d Cir. 1998).  Bald assertions, unsupported by admissible evidence, are thus not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.       Existence of a Partnership

Defendant argues she is entitled to summary judgment on all of plaintiff's claims because, as a matter of law, the parties never formed a partnership.

The Court agrees there was no partnership but disagrees that all of plaintiff's claims must be dismissed on those grounds.

A.       Legal Standard

In New York,[9] a party seeking to establish the existence of a partnership, absent a written agreement, must show:  (i) the sharing of profits and losses; (ii) joint control and management; (iii) contribution by each party of property, financial resources, effort, skill, or knowledge; and (iv) the parties' intention to be partners.  Kidz Cloz, Inc. v. Officially for Kids, Inc., 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004).

"When there is no written partnership agreement between the parties, the court must determine whether a partnership in fact existed from the conduct, intention, and relationship between the parties."  Fasolo v. Scarafile, 120 A.D.3d 929, 929–30 (4th Dep't 2014); accord Czernicki v. Lawniczak, 74 A.D.3d 1121, 1123–24 (2d Dep't 2010).  Although no single factor is determinative, "some of them weigh more heavily than others."  Toretto v. Donnelly Fin.

---

[9]       In a diversity case, the Court must use the choice-of-law rules of the forum state to determine the substantive law to be applied.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  "However, where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry."  Cargo Partner AG v. Albatrans Inc., 207 F. Supp. 2d 86, 93 (S.D.N.Y. 2022), aff'd, 352 F.3d 41 (2d Cir. 2003).  Here, the parties both briefed New York law on the existence of a partnership, without engaging in a choice-of-law analysis.  They have, therefore, "consented to the application of the law of the forum state" on this issue.  Id.

Sols., Inc., 583 F. Supp. 3d 570, 587 (S.D.N.Y. 2022).  In particular, an agreement to share in

both profits <u>and</u> losses is "indispensable" to partnership formation.  <u>Fisher v. Tice</u>, 692 F. App'x

54, 56–57 (2d Cir. 2017) (summary order).[10]  As such, unless both parties consent, "either

expressly or impliedly, to share liability for the possible obligations, debts, and losses" of the

business, no partnership exists.  <u>Fisher v. Tice</u>, 2016 WL 4626205, at *14 (S.D.N.Y. July 5,

2016), <u>aff'd</u>, 692 F. App'x 54.

      B.    <u>Analysis</u>

Plaintiff has not raised a triable issue of fact as to the existence of a partnership.

Plaintiff is correct that, as a general matter, several factors are relevant in an analysis of

partnership formation.  However, the overwhelming weight of authority demonstrates that the

absence of "any agreement to share the burden of losses" is "fatal" to a partnership claim.

<u>Davella v. Nielsen</u>, 208 A.D.2d 494, 494 (2d Dep't 1994); <u>Dinaco, Inc. v. Time Warner, Inc.</u>,

346 F.3d 64, 68 (2d Cir. 2003); <u>Kidz Cloz, Inc. v. Officially for Kids, Inc.</u>, 320 F. Supp. 2d at

177.

The only exception to this rule is for cases in which "there was no reasonable expectation

of losses."  <u>Fat Brands v. Ramjeet</u>, 75 F.4th 118, 129–30 (2d Cir. 2023).  But plaintiff himself

insists, when he agreed to partner with defendant, the FBO was in dire straits:  he asserts it was

facing "financial ruin"; it was "beset by persistent disorganization and delay" (Doc. #118 ¶¶ 10,

24); it suffered from a poor reputation in the community; and its facilities were rundown and

needed repair (Doc. #116 ¶¶ 5–7).  Under these circumstances, there is no genuine dispute that

---

[10]    Because "joint ventures are governed by the same legal rules as partnerships" in New York, cases concerning the formation of a joint venture apply with equal force to the instant motion.  <u>See</u> <u>Scholastic, Inc. v. Harris</u>, 259 F.3d 73, 84 (2d Cir. 2001).

"losses were plainly possible in connection with this endeavor."  Fisher v. Tice, 692 F. App'x at

57.  Accordingly, the exception recognized in Fat Brands does not apply here.

Plaintiff argues the business did not actually incur any losses, so there were no

obligations in which he could share.  As an initial matter, this is somewhat beside the point.

Partnerships are creatures of contract, whether express or implied.  Growblox Sci., Inc. v. GCM

Admin. Servs. LLC, 2016 WL 1275050, at * 7 (S.D.N.Y. Mar. 13, 2016).  Thus, the critical issue

is whether the parties agreed they would both be liable for future business obligations, not

necessarily whether they shared losses in fact.  See Cleland v. Thirion, 268 A.D.2d 842, 844 (3d

Dep't 2000).

That said, if the parties had shared losses as a matter of course, this would be relevant to

whether a prior existing agreement could be inferred.  See Vogel v. TakeOne Network Corp.,

2023 WL 5276857, at *5 (S.D.N.Y. Aug. 13, 2023) (finding the "absence of a course of conduct

sharing losses" fatal to partnership claim).  But, here, the evidence cuts cleanly against any

suggestion of a loss-sharing agreement:  although SAC "never reported losses on its tax returns"

(Doc. #119 ¶ 30), the business did incur financial obligations in the form of business loans.

Plaintiff does not dispute[11] that defendant was the only signatory or guarantor for these loans

(Doc. #116 at 29–30), and the record does not suggest otherwise (see, e.g., Doc. #110-1).

Plaintiff also argues defendant never told him about the loans, "thereby denying him the

opportunity to contribute or obligate himself thereto."  (Doc. #121 at 24 n.26).  However, that

defendant never discussed the loans with plaintiff is, in itself, "a strong indication they never had

---

[11]     Although plaintiff claims he "[d]isagree[s]" with this statement, he does not actually
dispute its substance.  Rather, he points out he "was not consulted" about the referenced loans
and complains defendant did not produce evidence of any other loans in discovery.  (Doc. #116
at 29).  These arguments are neither consistent with the spirit of Local Rule 56.1 nor relevant.

an agreement to share [losses]."  Slinin v. Shnaider, 2019 WL 13214733, at *7 (S.D.N.Y. Oct. 1, 2019); see Kidz Cloz, Inc. v. Officially for Kids, 320 F. Supp. 2d at 175 (observing "the parties never discussed what would occur in the event of a loss").[12]

Plaintiff does present evidence he was associated with and performed services for the business during his relationship with defendant (see, e.g., Doc. #127 ¶¶ 19, 34; Doc. #117-10 at 30; Doc. #117-14 at ECF 3; Doc. #131-1), loaned defendant funds for the business, and incurred certain service-related expenses (for which he was not reimbursed).  Although this evidence suggests the parties had some form of business relationship, it does not create a genuine dispute of fact as to the existence of a partnership.

For example, plaintiff's contribution of time and services, no matter how significant, is insufficient on its own to make him a partner, absent some other proprietary interest in the business.  Kidz Cloz, Inc. v. Officially for Kids, Inc., 320 F. Supp. 2d at 175; Rivkin v. Coleman, 978 F. Supp. 539, 543 (S.D.N.Y. 1997) ("[A]lleged sweat equity [is] insufficient to form a partnership.").

Moreover, even if the Court were to credit plaintiff's contention that he shared in the profits of the FBO (but simply "reinvested" them), "the sharing of profits is consistent with other

---

[12]    The Court notes plaintiff's representations on this point are somewhat inconsistent. Plaintiff's opposition to defendant's motion claims defendant "never told plaintiff about the loans" (Doc. #121 at 24 n.26), and cites to plaintiff's declaration as evidence.  However, in that declaration, plaintiff admits he was aware the FBO needed and was in the process of securing loans from institutional lenders, but defendant never provided him with "any of the loan applications, guarantees, or paperwork."  (Doc. #118 ¶¶ 46–47).  Whatever the truth of the matter, defendant's failure to seek plaintiff's contribution or guarantee on the loans is flatly inconsistent with the suggestion they formed a mutual loss-sharing agreement.

types of business arrangements," and therefore not uniquely indicative of a partnership.[13]  See Slinin v. Shnaider, 2019 WL 13214733, at *7.

In addition, neither party disputes that the $1.3 million plaintiff provided was a loan, which defendant repaid.  (Pl. 56.1 Statement ¶ 23).  "Such loans of cash by one person to another for the purposes of business during the existence of the claimed relationship usually negates the notion of partnership."  Brodsky v. Stadlen, 138 A.D.2d 662, 663 (2d Dep't 1988).

Lastly, although plaintiff makes various references to "capital" and financial contributions, the Court cannot identify any capital plaintiff contributed to the alleged partnership other than expenses he incurred in performing certain services.  "Where there is undisputed evidence that a party never made a capital contribution to the business, such evidence strongly suggests that no partnership existed."  Hammond v. Smith, 151 A.D.3d 1896, 1899 (4th Dep't 2017).

In sum, there is no genuine dispute of material fact as to whether plaintiff and defendant formed a partnership.  Thus, no partnership existed.

---

[13]    Although the Court need not reach the question of whether plaintiff shared in the profits of the FBO, it is worth noting that plaintiff's argument in this respect is dubious.  During the thirteen years of the alleged partnership, the FBO generated substantial profits.  Yet plaintiff (unlike defendant) never received a salary, dividend, or distribution from the business.  Plaintiff insists, however, that he was sharing in the profits, but that he simply reinvested his share.  However, plaintiff has been unable to produce any accounting or other evidence demonstrating the amount of his share of the profits and/or this supposed "reinvestment."  Rather, plaintiff asserts that the fact he never received a salary, distribution, or dividend is evidence he reinvested his profits in the business.  However, this merely assumes the conclusion—plaintiff attempts to prove he shared in the profits by pointing to the absence of proof he ever drew on the profits.  Of course, these facts are also consistent with plaintiff never having had a share of the profits in the first place.

C.      Partnership-Dependent Claims

As noted above, defendant argues all of plaintiff's claims are predicated on the existence

of a partnership between the parties to own, operate, and manage the FBO.

The Court disagrees.

Neither party devotes meaningful attention to this issue in their briefing.  Nonetheless, at

bottom, the Court may not find for defendant on claims for which she is not entitled to judgment

as a matter of law.  See Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir.

2004).  Accordingly, the Court must determine, on a claim-by-claim basis, whether plaintiff can

proceed on each of his causes of action as a matter of law, notwithstanding the absence of a

partnership between the parties.

1.      First, Second, Third, and Fourth Causes of Action:  Partnership Remedies

Plaintiffs first through fourth causes of action all seek explicit partnership remedies that

are based on rights available only to partners.  (See Am. Compl. ¶¶ 179–246).  Accordingly,

plaintiff's claims for an accounting, judicial dissolution, dissolution based on fraud or

misrepresentation, and liquidation must all be dismissed.

2.      Fifth Cause of Action:  Fraud Claim

It is self-evident that, in the abstract, a plaintiff need not show the existence of a

partnership to pursue a claim for fraud or fraudulent misrepresentation.  Under New York law, a

fraud claim requires "a misrepresentation . . . which was false and known to be false by

defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of

the other party on the misrepresentation or material omission, and injury."  Lama Holding Co. v.

Smith Barney Inc., 88 N.Y.2d 413, 421 (1996).  In other words, to state a fraud claim, a plaintiff

must show "a representation of material fact, falsity, scienter, reliance, and injury." Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 57 (1999).

Here, the fraud claim is based on plaintiff's allegation that defendant said she wished to sell the FBO to a third-party purchaser, with the parties to divide the profits of the sale equally between them. (Am. Compl. ¶¶ 233–34). However, plaintiff claims that when defendant made this statement, she was planning to or had already decided to take on a new partner and "freez[e] Plaintiff out of both the Partnership and management of the FBO." (Id. ¶ 235). Plaintiff alleges he was falsely induced to consent to the sale of the FBO and "was never paid for his 50% share of the Partnership's assets." (Id. ¶ 242).

Because the Court finds no reasonable juror could conclude the parties formed a partnership, as a matter of law, plaintiff is not entitled to half of the business's assets based on his status as a partner. Plaintiff pleads no other injury specific to his fraud claim. Accordingly, as a matter of law, plaintiff's fraud claim fails because he cannot make a sufficient showing on an essential element of his claim.[14] See Celotex Corp. v. Catrett, 477 U.S. at 322–23.

### 3.   Sixth Cause of Action:  Quantum Meruit/Unjust Enrichment Claim

Plaintiff's sixth cause of action is for quantum meruit/unjust enrichment. Under New York law, courts "may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005). To succeed on such a claim, a plaintiff must establish "(1) the

---

[14]     It bears mentioning that plaintiff had notice and an opportunity to develop arguments as to the viability of his claims in the absence of a partnership. In her motion papers, defendant took the explicit position summary judgment was warranted on all of plaintiff's claims because the parties had not formed a partnership. (Doc. #108 at 3). Moreover, even at the pleading stage, plaintiff brought claims and made allegations "in the alternative" if the Court determined no partnership existed. (See, e.g., Am. Compl. ¶¶ 256, 290, 309).

performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."  Id.

Here, plaintiff asserts both that defendant has been unjustly enriched by his services— i.e., his "input of time, effort, experience, labor, and resources"—and that it would be inequitable to permit defendant to retain the value of his interest in the alleged partnership or the increase in the value of the business during their relationship.  (Am. Compl. ¶¶ 254–56).  As with his fraud claim, plaintiff cannot recover an ownership interest or share of the business's assets under quantum meruit based on his status as a partner.  However, plaintiff is not perforce barred from seeking equitable relief for the value of his services generally.  See, e.g., Growblox Sci., Inc. v. GCM Admin. Servs., LLC, 2015 WL 3504208, at *9.

Accordingly, plaintiff's quantum meruit/unjust enrichment claim may proceed but only insofar as it seeks compensation for the value of plaintiff's contributions of time, services, and money to the business, but not recovery of an alleged interest in the business itself.  See Collins Tuttle & Co., Inc. v. Leucadia, Inc., 153 A.D.2d 526, 526 (1st Dep't 1989) ("Recovery on a claim premised upon quasi-contract or unjust enrichment is limited to the reasonable value of the services rendered by the plaintiff.").

4.    Seventh and Ninth Causes of Action:  Contract Claims

Plaintiff's seventh and ninth causes of action are for breach of contract and breach of the duty of good faith and fair dealing.  Both of these claims require an express contract, whether oral or written.  See Cambridge Cap. LLC v. Ruby Has LLC, 565 F. Supp. 3d 420, 456, 471–72 (S.D.N.Y. 2021).  With respect to these claims, plaintiff has not alleged the existence of any

applicable contract other than a partnership agreement.  Accordingly, defendant is entitled to summary judgment on the seventh and ninth causes of action.

> 5.   Eighth Cause of Action:  Breach of Fiduciary Duty Claim

Plaintiff's eighth cause of action, for breach of fiduciary duty, is similarly based on the theory defendant owed plaintiff a fiduciary duty because he was "a partner in the Partnership." (Am. Compl. ¶ 267).  Accordingly, this claim must also be dismissed.

Plaintiff's remaining claims are discussed below in the context of his motion for partial summary judgment.[15]

III.   Eleventh Cause of Action:  Declaratory Judgment Claim

Plaintiff argues he is entitled summary judgment on his eleventh cause of action in which he seeks a declaration that the Purchase Agreement[16] is a "legal nullity" because (i) the agreement and "the process of its creation" were "fatally deficient," (ii) it was "void and/or voidable" for lack of or inadequate consideration, and (iii) it is voidable because it was the result of defendant's impermissible self-dealing.  (Doc. #121 at 6–7).

The Court disagrees but on other grounds.

Under New York law, "[a] cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action." Apple Records, Inc. v. Cap. Recs., Inc., 137 A.D.2d 50, 54 (1st Dep't 1988).  Put differently, a declaratory judgment claim is unnecessary if it "seeks resolution of legal issues that will, of

---

[15]     The Court dismissed plaintiff's tenth cause of action, seeking the imposition of a constructive trust, by bench ruling dated September 2, 2021.  (See Docs. ##24, 30).

[16]     In the amended complaint, plaintiff requests a declaratory judgment as to both the Purchase Agreement and the Trust.  (Am. Compl. ¶ 308).  However, his summary judgment motion suggests he seeks only a declaratory judgment as to the Purchase Agreement.  In any event, plaintiff's argument is premised, in part, on the Trust being invalid, so this distinction is ultimately immaterial.

necessity, be resolved in the course of the litigation of the other causes of action." Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 249–50 (S.D.N.Y. 2006).

In the same vein, "[d]eclaratory relief is intended to operate prospectively.  There is no basis for declaratory relief where only past acts are involved." Frontier Airlines, Inc. v. AMCK Aviation Holdings Ir. Ltd., 2023 WL 3868585, at *14 (S.D.N.Y. June 7, 2023) (collecting cases).

Here, both principles apply.

Plaintiff seeks a declaratory judgment invalidating the Purchase Agreement and, by implication, the Trust.  In his unjust enrichment claim (the twelfth cause of action), plaintiff likewise contends the Trust and the Purchase Agreement are null and void and, thus, defendant "gained the appearance of . . . ownership and control" over SAC "using the legally invalid [Purchase Agreement] as a false pretense."  (Doc. #121 at 20).  Thus, plaintiff's claim for unjust enrichment necessarily requires a conclusion that the Purchase Agreement and Trust were invalid.  Plaintiff also seeks the value of his alleged ownership interest in SAC under his unjust enrichment theory.  In sum, his declaratory judgment claim "seeks no relief that is not implicitly sought" through another cause of action. Sofi Classic S.A. de CV v. Hurowitz, 444 F. Supp. 2d at 249.

Moreover, the parties have no ongoing business or personal relationship that would benefit from the certainty of a declaratory judgment.  Quite the opposite is true—the bulk of the relevant events took place more than a decade ago. Cf. Amusement Indus., Inc. v. Stern, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010) (noting a court should consider "(1) whether the judgment

will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty").

In light of these considerations, it is within the Court's discretion to dispose of the declaratory judgment claim as "parallel and duplicative" of plaintiff's cause of action for unjust enrichment.  See Smith v. Metro. Prop. & Liab. Ins. Co., 629 F.2d 757, 759–60 (2d Cir. 1980).

Accordingly, plaintiff's claim for a declaratory judgment is dismissed.

IV.   Twelfth Cause of Action:  Unjust Enrichment Claim Based on the Purchase Agreement

Plaintiff argues he is entitled to summary judgment on his twelfth cause of action, for unjust enrichment, because it is undisputed defendant "gained access to SAC through a fraudulent scheme" and she was thereby unjustly enriched by access to its assets and profits.[17]

The Court disagrees because it concludes this claim is time barred.

A.   Statute of Limitations

In New York, the statute of limitations for claims of unjust enrichment is six years.[18]

Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 518 (2d Cir. 2001).  When evaluating timeliness, the Court must determine when the limitations period began to run.  The limitations period for an

---

[17]   Plaintiff's twelfth cause of action for unjust enrichment is distinct from his sixth cause of action for "quantum meruit/unjust enrichment."  The sixth cause of action posits defendant was unjustly enriched by plaintiff's contributions to the alleged partnership, for which he was not compensated or reimbursed.  The twelfth cause of action is based on the notion that defendant was unjustly enriched because she used the invalid Purchase Agreement to convert plaintiff's ownership interest in SAC.

[18]   The Purchase Agreement contains a choice-of-law provision dictating Florida law will govern the substance of the contract.  (Doc. #110-6 at 2).  However, "[a] federal court sitting in diversity applies the forum state's statute of limitations, as well as any provisions that govern the tolling of the statute of limitations."  Vincent v. Money Store, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013).  Accordingly, the Court applies New York law to this analysis.  And, in any event, the application of Florida law would not change the outcome here, as the limitations period under Florida law is four years.  See Fla. Stat. § 95.11(3)(o).

unjust enrichment claim begins "upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered." Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 364 (2d Cir. 2013).

Here, the wrongful act occurred in January 2011, when defendant allegedly used the purportedly invalid Purchase Agreement to convert plaintiff's ownership interest in SAC. It is undisputed the Purchase Agreement was executed more than nine years before plaintiff filed this lawsuit. Accordingly, the limitations period on plaintiff's claim of unjust enrichment has long expired.[19]

 B. <u>Equitable Tolling</u>

Insofar as plaintiff argues his unjust enrichment claim should be equitably tolled because plaintiff fraudulently concealed her wrongful conduct until 2019, this theory is unavailing.

"Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007). Equitable tolling "is applied only in rare circumstances when the defendant's fraudulent conduct either conceals the existence of a cause of action or acts to delay

---

[19] To the extent plaintiff relies on fraud, contract defenses, or breach of fiduciary duty in support of his declaratory judgment claim, the statute of limitations for each underlying substantive claim would also be six years. Accordingly, even if plaintiff's declaratory judgment claim were not duplicative, the Court still would have been unable to reach the merits of plaintiff's argument that the Purchase Agreement is invalid, because the cause of action would be time-barred. See Stone v. Williams, 970 F.2d 1043, 1047–48 (2d Cir. 1992) (declaratory judgment action is time barred "if relief on a direct claim based on such rights would also be barred"). And, for substantially the same reasons plaintiff is not entitled to equitable tolling, he would have been unable to rely on the discovery accrual rule to extend the applicable limitations period to 2019. Dodd v. Cigna Sec., Inc., 12 F.3d 346, 350 (2d Cir. 1993) (noting that the discovery accrual rule and equitable tolling are "similarly limited" and available only when the plaintiff "has exercised reasonable care and diligence in seeking to learn the facts which would disclose fraud").

Plaintiff from commencing a lawsuit." <u>DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, P.A.</u>, 2021 WL 3141672, at *9 (S.D.N.Y. July 26, 2021). "Due diligence on the part of the plaintiff in bringing an action, however, is an essential element of equitable relief." <u>Abbas v. Dixon</u>, 480 F.3d at 642. Moreover, equitable tolling "is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient." <u>Ross v. Louise Wise Servs., Inc.</u>, 836 N.Y.S.2d 509, 518 (2007).

Here, plaintiff does not deny he signed the Purchase Agreement without reading it. Had he read the document, he would have discovered (i) the Trust, not plaintiff, was the purported owner of all shares of SAC, and (ii) a different corporation (Sigrun), of which defendant was the president, was purchasing such shares for the allegedly "grossly inadequate" sum of $40,000. If, as plaintiff alleges, he was entirely unaware the Trust existed or that he had supposedly transferred his entire ownership interest in SAC to the Trust, then reading the Purchase Agreement would have alerted him that something was amiss.

Furthermore, other than defendant's neglecting to tell plaintiff about her allegedly improper conversion of SAC stock, plaintiff has not offered any facts suggesting defendant took affirmative steps to prevent him from consulting the Purchase Agreement or from later discovering other indicia that plaintiff no longer had an ownership interest in SAC. For example, as plaintiff concedes, he had access to SAC's annual reports filed with the Florida Department of State, which identified defendant as the sole director of the company starting in 2012.

In any event, on a more fundamental level, "[a] party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms." <u>Sofio v. Hughes</u>, 162 A.D.2d 518, 519 (2d Dep't 1990). Plaintiff repeatedly testified throughout his deposition that he regularly signed any document defendant placed before him and never read them because

he simply trusted she was managing the "books" side of the business.  Such circumstances do not

warrant the application of equitable tolling.

In sum, there is no triable issue of fact as to "whether a reasonable plaintiff in the

circumstances would have been aware of the existence of a cause of action" within the applicable

limitations period.  Valdez ex rel. Donely v. United States, 518 F.3d 173, 183 (2d Cir. 2008).

Accordingly, equitable tolling does not apply to plaintiff's claim for unjust enrichment, and that

claim must be dismissed as time-barred.

**CONCLUSION**

Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

Plaintiff's motion for partial summary judgment is DENIED.

Plaintiff's sixth cause of action for quantum meruit/unjust enrichment may proceed but

only insofar as he seeks compensation for his contributions of time, services, and money to the

FBO.  All other claims are dismissed.

A case management conference is scheduled for April 4, 2024, at 11:00 a.m.  The

conference will proceed in person, at the White Plains courthouse, Courtroom 620.  Counsel

shall be prepared to discuss the setting of a trial date and a schedule for pretrial submissions, as

well as what efforts they have made and will continue to make to settle this case.

The Clerk is instructed to terminate the motions.  (Docs. ##107, 115).

Dated:  March 5, 2024
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge